United States District Court
Southern District of Texas
**ENTERED**
May 18, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Ultra Deep Picasso Pte Ltd., | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Case No. 4:21-cv-03891 |
| Dynamic Industries Saudi Arabia Ltd., | § § § | |
| *Defendant,* | § § | |
| and | § § | |
| Riyad Bank, | § § | |
| *Garnishee.* | § § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the Court is a Motion to Vacate Rule B Attachment and Request for Expedited Relief, filed by Defendant Dynamic Industries Saudi Arabia Ltd. ("DISA") and Garnishee Riyad Bank.  Dkt. 56.  DISA seeks to vacate this Court's order of attachment, issued on December 2, 2021 (Dkt. 10). A hearing on the motion to vacate was held on March 31, 2023, Dkt. 61, at which Plaintiff Ultra Deep Picasso Pte Ltd. ("UDP") presented no additional exhibits or testimony.  UDP then filed a "Motion to Require Garnishee Riyad Bank to Produce Texas State Banking License Application Documents and to

Stay Issue of Report and Recommendation Until Their Production." Dkt. 65. In effect, UDP sought to compel Riyad Bank to participate in additional discovery surrounding its license to do business in Texas, arguing that this Court should not rule on the motion to vacate until such discovery takes place.

After reviewing the parties' briefing and the governing law, and further considering the parties' arguments at the March 31, 2023 hearing, it is recommended that DISA's motion to vacate (Dkt. 56) be granted and that UDP's suit be dismissed for lack of jurisdiction. Dkts. 56, 60-63. For related reasons, it is ordered that UDP's motion to compel (Dkt. 65) be denied.

## Background

UDP filed a verified complaint asserting that DISA breached a contract for maritime services by failing to pay for UDP's provision of subsea diving support vessels for offshore operations of Saudi Aramco. Dkt. 1 ¶¶ 8-11. The complaint asserts two counts: one, for breach of a maritime contract, *id.* ¶¶ 12-14, and the other, for maritime attachment and garnishment of DISA's funds that are allegedly held by Riyad Bank, *id.* ¶¶ 7, 15-18.

By verified application, Dkt. 4-1, UDP sought and ultimately was granted an *ex parte* order for attachment of "assets held by or at" Riyad Bank, pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and

Maritime Claims of the Federal Rules of Civil Procedure, Dkt. 10 at 1-2.[1] The order also incorporated Supplemental Rule E(4)(f), by specifying "that any person claiming an interest in the property attached or garnished pursuant to said Order shall, upon application to the Court, be entitled to a prompt hearing at which the Plaintiff [UDP] shall be required to show why the garnishment should not be vacated or other relief granted ...." Dkt. 10 at 2; Fed. R. Civ. P., Supp. R. E(4)(f) (same language).

After filing a notice of restricted appearance under Supplemental Rule E(8), Dkt. 34, DISA filed two motions to dismiss: for lack of personal jurisdiction and improper venue, and based on *forum non conveniens*, Dkts. 35, 36. UDP responded, Dkts. 43, 44, and DISA filed replies, Dkts. 47, 48. The parties' debate over procedural issues prompted the Court to convene a hearing on February 2, 2023, at which the parties made clear that the true dispute was over the validity of the order of attachment. Dkt. 52 (order setting hearing).

At the hearing, DISA clarified that it had filed its dispositive motions only out of an abundance of caution, in the event that UDP attempted to litigate the merits of the contract claim (count 1 of UDP's complaint) in this Court. Dkt. 1 at ¶¶ 12-14. Accordingly, the Court issued a Memorandum and

---

[1] Although the order also extended to Saudi Aramco, Dkt. 10 at 1, which originally was named as another garnishee, Dkt. 1 at 1, UDP later dismissed Saudi Aramco from this suit, Dkt. 22.

Recommendation recommending the denial of DISA's motions to dismiss, without prejudice for the parties to litigate their issues more properly via a motion to vacate and subsequent briefing.   Dkt. 53.   Adopting the recommendation, this Court overruled UDP's objections, noting that they were better raised in a response to DISA's anticipated motion to vacate the attachment order.  Dkt. 58.

DISA and Riyad Bank then filed this motion to vacate, arguing that UDP did not carry its burden of showing that the attachment order should remain in effect.  Dkt. 56.  In particular, DISA and Riyad Bank maintained that UDP did not show that DISA had any property in this District, including any property deposited with Riyad Bank.  *Id.* at 4-6.  UDP responded by arguing that (1) DISA "lacked standing" to challenge the attachment; and (2) DISA's property at Riyad Bank is within the District because Riyad Bank, and any account it maintains worldwide, is located in the District for the purpose of Supplemental Rules B and E.  Dkt. 60 at 5-16.  DISA and Riyad filed a reply, Dkt. 62, and the Court held a hearing on the motion to vacate on March 31, 2023, Dkt. 61 (order setting hearing).

The Court invited the parties to treat the hearing as an evidentiary hearing pursuant to Fed. R. Civ. P., Supp. R. E(4)(f).  Neither party submitted exhibits nor called witnesses, and counsel proceeded to make legal arguments. Riyad Bank did, however, seek permission to provide documentation that its

4

license with the Texas Department of Banking was recently corrected to reflect its status as a foreign bank agency (not branch).  The Court granted leave, without weighing in on the significance of the documents, and Riyad Bank's licenses were filed as a post-hearing supplement.  Dkt. 63.

On April 4, 2023, after the hearing and nearly two weeks after DISA and Riyad Bank had filed their reply in support of their motion to vacate, UDP filed a "Motion to Require Garnishee Riyad Bank to Produce Texas State Banking License Application Documents and to Stay Issue of Report and Recommendation Until Their Production."  Dkt. 65.  UDP argued that it had no indication that Riyad Bank was a mere agency until the February 2, 2023 hearing—which was held after the December 22, 2022 discovery deadline had expired.  *Id.* at 2-3.  UDP claims that, because Riyad Bank raised the issue after discovery closed, it should be subjected to additional discovery.  *Id.*

Because the motion to compel is predicated on the assumption that Riyad Bank's license from the Texas Department of Banking is dispositive for maritime attachment purposes, the Court addresses these motions together.

## Analysis

In its February 6, 2023 Memorandum and Recommendation, this Court found that "this is solely an attachment proceeding, and the dispute over whether DISA's funds can be found within this district amounts to a challenge to the Court's existing attachment order."  Dkt. 53 at 3.  Given that the parties

5

were contesting UDP's right to maintain the order of attachment of DISA's property under Supplemental Rule B, the Court also gave the parties "an opportunity to present its argument through the proper mechanism— Supplemental Rule E(4)(f)." *Id.*

The Court finds that UDP did not meet its Rule B burden of proving that DISA's property is located in the Southern District of Texas. UDP made no effort to present evidence or call witnesses at the Rule E(4)(f) hearing that would have met the evidentiary burden. UDP also failed to provide apposite authority indicating that Riyad Bank's application materials to the Texas Department of Banking are germane to the analysis as to whether DISA could access its property in the District via Riyad Bank. The Court accordingly recommends that DISA and Riyad Bank's motion to vacate be granted and further orders that UDP's motion to compel be denied.

## I.   <u>Legal Standard</u>

"Under Supplemental Rule B, a district court 'take[s] jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant.'" *Agrocooperative Ltd. v. Sonangol Shipping Angola (Luanda) Limitada*, 2015 WL 138114, at *4 (S.D. Tex. Jan. 8, 2015) (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001)); Fed. R. Civ. P., Supp. R. B(1). Such a *quasi in rem* action can only proceed "[i]f a defendant is not found within the district ...." Fed. R. Civ. P. Supp. R. B(1)(a).

6

This means "a court will lack in personam jurisdiction over the defendant when it orders that a writ of attachment be issued." *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 69 n.12 (2d Cir. 2009); *see also, e.g.*, *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir. 1992) (explaining that "if the person cannot be found in the district, the plaintiff is protected by the ability to proceed against the thing.  Such a proceeding is an action quasi in rem").

Because the Court previously issued an attachment order that includes a threshold finding that UDP met the requirements of Supplemental Rule B, *see* Dkt. 10 at 1, the proper procedural vehicle for DISA to mount this challenge is to request vacatur of the attachment order.  *See* Fed. R. Civ. P., Supp. R. E(4)(f) ("Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules."); *see also DS-Rendite Fonds Nr. 108 VLCC Ashna GMBH & Co Tankschiff KG v. Essar Cap. Americas Inc.*, 882 F.3d 44, 49 (2d Cir. 2018) ("[D]istrict courts have often initially granted attachment [pursuant to Supplemental Rule B] and then used Rule E hearings to determine whether the requirements of Rule B were in fact met.").

"Many district court cases in the Fifth Circuit have adopted and/or applied the Second Circuit's test for the vacatur of an attachment."

7

*Agrocooperative Ltd.*, 2015 WL 138114, at *5 (collecting cases that have applied the standard from *Aqua Soli Shipping, Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2d Cir. 2006), *abrogated on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58 (2d Cir. 2009)). That is, when an order of attachment is challenged under Supplemental Rule E, "the burden is on the plaintiff to show that '1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment.'" *Id.* at *5 (quoting *Aqua Stoli*, 460 F.3d at 445 & n.5); *see also Knox v. Hornbeck Offshore Servs., LLC*, 2019 WL 3202296, at *2 (S.D. Tex. July 16, 2019) ("At the Rule E(4)(f) hearing stage, the burden rests with the plaintiff to show that the requirements of Supplemental Rules B and E have been satisfied.").

## II.  UDP did not meet its burden of demonstrating that DISA's property may be found within the Southern District of Texas.

DISA and Riyad Bank argue the attachment order should be vacated because UDP did not meet the third element of Supplement Rule B—*i.e.*, that DISA's "property may be found within the district." Dkt. 56 at 6-8; *Aqua Stoli Shipping*, 460 F.3d at 445. Based on DISA's and Riyad Bank's uncontroverted evidence that no attachable property can be found in District, the Court agrees.

8

**A.      UDP failed to contest DISA and Riyad Bank's evidence that no DISA property can be found in this District.**

In support of the motion to vacate, DISA and Riyad Bank attached evidence that DISA holds no property in the District.  Specifically, DISA submitted the uncontroverted declaration of its general manager, Donald Sinitiere, who stated that DISA "has never owned, leased, rented, or otherwise occupied – even temporarily – any real property in Texas or anywhere else in the United States or its territories."  *See* Dkt. 35-1 ¶ 7 (April 2022 declaration attached to DISA's motion to dismiss), Dkt. 65-1 (Ex. A to motion to vacate, reattaching same declaration).  Mr. Sinitiere also swore that DISA "has never had any employees or maintained (even on a temporary basis) any offices … in Texas or anywhere else within the United States," *id.* ¶ 8, "has never maintained any bank accounts in Texas or anywhere else within the United States or its territories," *id.* ¶ 9, and "has never derived any annual revenue from businesses conducted in the United States," *id.* ¶ 10.

Riyad Bank also attached the declaration of Chris Chambers, the general manager of Riyad Bank Houston Agency (the "Houston Agency").  Dkt. 56-3.  Mr. Chambers stated that the Houston Agency is "an agency of a foreign bank (Riyad Bank) pursuant to the Texas Finance Code" whose "business is to provide loans, guarantees and stand-by letters of credit to U.S. and Canadian companies to facilitate business in Saudi Arabia."  Dkt. 56-3 ¶¶ 2-3.  He also

9

stated that it "is unable to accept deposits from *any clients and holds no assets of any clients*," *id.* ¶ 4 (emphasis added), and the agency "in fact *has no access whatsoever to any account that may be held by a client*, including [DISA], in Riyad Bank in Saudi Arabia," *id.* ¶ 6 (emphasis added). Mr. Chambers further stated that "[c]lients cannot withdraw any funds through the [Houston] Agency" and that "Riyad Bank has no bank branches in the United States"— only the Houston Agency itself. *Id.* ¶¶ 5, 7.

Finally, DISA and Riyad Bank attached Riyad Bank's response to UDP's interrogatories, wherein Riyad Bank repeatedly disavowed its access to, or knowledge of, any accounts held by DISA in this district—and more broadly, in the United States. Dkt. 56-2 (interrogatory responses). In response to UDP's eight interrogatories, Riyad Bank answered that there are no accounts or balances "owned or held or on behalf of Defendant or its affiliated or subsidiary companies *in the United States of America*," that it had not executed any transfers on behalf of DISA, that it neither controls nor has custody of any DISA property subject to the Court's writ of garnishment, and that it has no contracts with DISA in the United States of America. *Id.* (emphasis added).

When setting the March 31, 2023 Rule E(4)(f) hearing, the Court provided all parties the opportunity to present exhibits and put on witnesses. UDP declined that opportunity to contest DISA and Riyad Bank's evidence and instead presented purely legal arguments in opposition to the motion to vacate.

UDP therefore did not carry its burden of showing that DISA's property could be found within the District—a requirement to maintain the attachment of property under Supplemental Rule B.[2]  *See Agrocooperative Ltd.*, 2015 WL 138114, at *5.  Vacatur is appropriate.  *See, e.g.*, *Limonium Mar., S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 609 (S.D.N.Y. 1997) (voiding the attachment of property held by garnishees when all garnishees "responded that they are not in possession of any assets of" the defendant).

## B.    UDP cannot reach accounts held internationally with Riyad Bank, including any of DISA's.

Rather than contest the foregoing evidence, UDP argued that DISA and Riyad Bank's motion should be denied on two primary grounds.  UDP first argues that DISA lacks standing to seek vacatur.  Dkt. 60 at 5-7.  UDP also argues that every bank account at Riyad Bank in Saudi Arabia can be found

---

[2] DISA and Riyad Bank accurately observe that there is variation within the Southern District of Texas regarding the evidentiary standard that UDP must satisfy at the Rule E(4)(f) stage—that is, whether it must meet a "reasonable grounds/probable cause standard" or a "preponderance of the evidence" standard to avoid vacatur.  Dkt. 56 at 5 (collecting cases applying the two distinct standards); *compare Transatlantica Commodities Pte Ltd. v. Hanwin Shipping Ltd.*, 2022 WL 18932063, at *3 (S.D. Tex. Nov. 2, 2022) (describing the "reasonable grounds" standard where a court "determines whether it is likely that the alleged facts are true," but does not necessarily resolve factual disputes), *with Vinmar Int'l Ltd. v. M/T Clipper MAKISHIO*, 2009 WL 6567104, at *1 (S.D. Tex. Dec. 9, 2009) (implementing a "preponderance of the evidence" standard).  For purposes of this memorandum, however, that variation is academic.  UDP declined to contest DISA and Riyad Bank's evidence, even when given the opportunity to call and cross-examine their affiants.  As a result, UDP failed to satisfy either standard.

in the Southern District of Texas "because Riyad Bank is here." *Id.* at 8-16. Neither of these arguments is meritorious.

       1.   <u>DISA has standing to seek vacatur of the attachment order.</u>

First, UDP argued that DISA has no standing to challenge the order of attachment because Rule E(4)(f) allows only a "person claiming an interest in" the attached property to seek vacatur, but DISA has "insist[ed] emphatically that UDP has not arrested or attached any property." Dkt. 60 at 5-7. UDP misconstrues DISA's position.

From the outset, UDP has insisted that it can reach assets held anywhere in the world with Riyad Bank, so long as Riyad Bank was properly served. *See* Dkt. 4-1 at 5, 8 (arguing that service on Riyad Bank allowed UDP to reach "the bank accounts that DISA holds at Garnishee's institutions" and that it "perfected [service] through the financial institution's designated agent for service"). This *ex parte* memorandum is the one on which the Court relied when issuing its order of attachment, which permitted UDP to attach all assets "belonging to, due, claimed by, *being held for* or on behalf of, or being transferred for the benefit of *Defendant*, including, but not limited to any such assets as may be *in the possession, custody, or control of*, or being transferred through *any garnishee within this District*." Dkt. 10 at 1-2. DISA is not disavowing an interest in any property that can be construed as attached pursuant to the order of attachment—as that order was issued consequent to

12

UDP's broad (and eventually unsubstantiated) allegations.  Instead, DISA seeks vacatur because UDP cannot reach property outside this District—regardless of the Court's personal jurisdiction over Riyad Bank.  *Cf. Agrocooperative*, 2015 WL 138114, at *7-8 (garnishees, in contrast, can lack standing to seek vacatur if they "represented that they do not have possession, custody, or control of any property belonging to Defendants").

UDP's argument fails for the additional reason that it disregards an essential requirement of Rule B—that "defendant's property may be found within the district."  *Id.* at *5.  In effect, UDP attempts to invert the burden and prevent DISA from challenging the attachment so long as UDP has failed to identify DISA's attachable property within the District.  This logic runs afoul of the plain language of Rule B and the test for vacatur.  *Id.* (plaintiff bears the burden of avoiding vacatur by satisfying the requirements of Rule B).  Accordingly, DISA has standing to challenge the order pursuant to Rule E(4)(f), and UDP bears the burden of proving the Rule B requirements are met.

> ### 2.   UDP has not proven that DISA's accounts can be withdrawn from Riyad Bank within this District.

Next, UDP argues that, because Riyad Bank's Houston Agency was certified as a branch by the Texas Department of Banking pursuant to Tex. Fin. Code § 204 *et seq.*, DISA could have accessed its accounts in the Southern District of Texas.  Dkt. 60 at 2-3.  This argument is unpersuasive.

13

UDP has identified no authority suggesting that the Houston Agency's registration as a foreign bank branch *per se* satisfies the Rule B requirement that DISA's property be found within this District.  The Court has found no authority for that proposition either.

Rather than substantiating a legal connection between the Texas Finance Code and Supplemental Rule B, UDP claims that Texas law deems the Court's jurisdiction over Riyad Bank in the District sufficient.  *Id.* at 15.  That is, according to UDP, personal jurisdiction over Riyad Bank—which was accomplished via proper service on the Houston Agency—equates to the presence of DISA's property within the District.  *Id.*  But, as analyzed *supra*, personal jurisdiction over garnishees, while necessary, is distinct from the requirement that DISA's property be "in the hands of [those] garnishees named in the process."  Fed. R. Civ. P., Supp. R. B(1)(a).

UDP's cited authority further undermines its position.  In *Boland Marine & Industrial, LLC v. Bouchard Transportation Co.*, the Court analyzed the Rule B requirement that property be located within the District and determined that, under Texas law, "modern banking … accounts are 'located' wherever they are available for withdrawal by the depositor."  2020 WL 10051743, at *6 (W.D. Tex. Feb. 28, 2020), *report and recommendation adopted*, 2020 WL 10051738 (W.D. Tex. Mar. 26, 2020).  The *Boland Marine* court distinguished bank accounts, which "historically had a physical situs,"

14

from debts that are "entirely intangible" and have no situs, such as those addressed in UDP's other authorities.  *Id.* at \*4 (recognizing the "obvious distinctions between" bank account accounts and the debts depicted in *PSARA Energy, Ltd v. SPACE Shipping, Ltd.*, 290 F. Supp. 3d 158, 163 (D. Conn. 2017) and *Day v. Temple Drilling Co.*, 613 F. Supp. 194 (S.D. Miss. 1985)).

This Court is persuaded that *Boland Marine* states the proper standard for determining whether a defendant's property is located within the District for Rule B purposes.[3]  And while accounts in the modern banking world "may have more than one situs," those multiple locations are "wherever they are available for withdrawal by the defendant." *Acme Contracting, Ltd. v. Tolest, Inc.*, 2008 WL 4534175, at \*6-7 (E.D. Mich. Oct. 3, 2008).

UDP proffered no evidence that DISA can withdraw its property through the Riyad Bank agency in this District.[4]  Quite the contrary, Riyad Bank

---

[3] UDP's response contains a notable internal inconsistency.  Despite UDP's conflation of personal jurisdiction over Riyad Bank (through service on its Houston Agency) with *in rem* jurisdiction over DISA's foreign property, Dkt. 60 at 8-9, UDP also insists that "a growing number of other courts, including those in this State," specify that bank accounts are "located anywhere the account holder has access to it[,]" *id.* at 12.  The latter position confirms that the location of funds matters for purposes of *in rem* jurisdiction.

[4] In fact, there is no evidence that any Riyad Bank affiliate, even outside the United States, has DISA accounts.  *See* Dkt. 56-1 (declaration of Donald Sinitiere), 56-2 (interrogatory responses), 56-3 (declaration of Chris Chambers).  But even if Riyad Bank's foreign affiliates hold DISA property, UDP's myopic focus on the 2022 document authorizing Riyad Bank to operate a "foreign bank branch" in Texas ignores that UDP itself attached records from previous years indicating that the location here was a mere agency of Riyad Bank.  *Compare* Dkt. 60-2 (Riyad Bank's 2022 foreign bank license), *with* 60-1 at 12 (2021 filing with the Texas Secretary of

proffered evidence that its Houston Agency does not operate to the full extent of its authorization by the Texas Department of Banking and has no access to any Riyad Bank client accounts, whether within or outside the United States. Dkt. 56-2 (Riyad Bank's interrogatory responses), 56-3 (declaration of Chris Chambers). This evidence is uncontroverted.

UDP provides no authority for the notion that Riyad Bank's authorization to operate as a foreign bank, under the Texas Finance Code, should override the undisputed evidence that its Houston Agency does not, in fact, operate as or otherwise exercise that authority. Accordingly, UDP did not satisfy its burden of showing that DISA has property within this District.

## III. **Because DISA's res is not located within this District, the Court lacks jurisdiction over DISA.**

DISA argues that the case should be dismissed if UDP failed to meet the requirements of Rule B and its attachment order is vacated. Given the

---

State registering "Riyad Bank, Houston Agency"), 60-1 at 10-11 (2019 amendment to Riyad Bank's registered address with the Texas Secretary of State, identifying the financial institution as "Riyad Bank, Houston Agency"), *and* 60-1 at 8-9 (2006 amendment changing the legal name of the financial institution from "Riyad Bank" to "Riyad Bank, Houston Agency").

At the March 31, 2023 hearing, Riyad Bank's counsel stated that the 2022 discrepancy was inadvertent and that it had corrected its status to an non-branch agent. Documentation of that correction was filed as a supplement to the motion to vacate shortly thereafter. Dkt. 63. Nevertheless, the Court need not consider the relevance of the 2022 discrepancy or its subsequent correction. This is because UDP provided no authority indicating that Riyad Bank *must* be considered as operating to the full extent of its authority, despite uncontroverted evidence to the contrary.

foregoing conclusions, DISA is correct.

"In a Rule B proceeding, 'the <u>res</u> is the only means by which a court can obtain jurisdiction over the defendant.'" *DS-Rendite Fonds Nr. 108*, 882 F.3d at 48 (quoting *Shipping Corp. of India*, 585 F.3d at 69).  "If a plaintiff is not able to successfully attach the defendant's property under Rule B, the district court lacks jurisdiction over the defendant." *Id.*; *Blueye Nav., Inc. v. Oltenia Nav., Inc.*, 1995 WL 66654, at *4-5 (S.D.N.Y. Feb. 17, 1995) (if no property was properly attached, then "no jurisdiction was even obtained under Supplemental Rule B" and "[c]ontinued exercise of jurisdiction over the defendants on this basis would violate both the letter and spirit of Supplemental Rule B").

UDP made clear, at the February 2, 2023 hearing, that UDP's action seeks solely to pursue the attachment of DISA's property under Rule B.  *See* Dkt. 53 at 3 (Memorandum and Recommendation noting UDP's clarification).  Vacating the attachment order (Dkt. 10) would terminate this Court's jurisdiction over DISA.  Accordingly, it is further recommended that UDP's claim be dismissed for lack of jurisdiction.

## IV.   <u>UDP's untimely motion to compel should be denied.</u>

Finally, UDP argues that the writ of attachment should not be vacated until it can conduct more discovery into potential DISA property at Riyad Bank.  Dkt. 60 at 7 (response to motion to vacate); Dkt. 65 (motion to compel).

UDP seeks to compel Riyad Bank's production of "its banking license application and related documents[] to confirm exactly what it applied for under Texas law" and to explore whether it is an agency or instead a branch. Dkt. 65 at 3-6.

But as addressed *supra*, Part II.B, UDP identified no authority that would allow it to attach any DISA property outside this District simply because Riyad Bank was authorized by the Texas Department of Banking to operate a full branch here. The discovery sought is therefore not relevant. *See* Fed. R. Civ. P. 26(b).

Moreover, discovery closed on December 22, 2022, thirteen months after UDP filed this suit. During that time, UDP was unable to locate any DISA property within this District. Indeed, UDP's interrogatories did not even ask whether DISA's property would be "available for withdrawal" from Riyad Bank here. *See* Dkt. 56-2 (interrogatory responses). UDP chose to forgo exploring this issue, even though UDP's own application for the writ of attachment, at the outset, block-quoted the legal standard in *Boland Marine*, including its conclusion that "accounts are 'located' wherever they are available for withdrawal by the depositor." Dkt. 4-1 at 6. More recently still, UDP declined to treat the Rule E(4)(f) hearing as an evidentiary hearing wherein it could examine DISA and Riyad Bank's witnesses.

Because UDP had ample opportunity to acquire information relevant to its claim, it has no valid basis for reopening discovery at this late juncture. UDP's motion is therefore denied. *See Blueye Navigation, Inc.,* 1995 WL 66654, at *6 (declining to allow discovery, even assuming courts maintain authority to do so in the absence of a proper Rule B attachment, because "plaintiffs attempted to attach assets at various banks almost a year ago and failed to locate any assets that belonged to defendant").

<u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that the Motion to Vacate Rule B Attachment (Dkt. 56) filed by Defendant DISA and Garnishee Riyad Bank be **GRANTED** and that the Court's order of attachment (Dkt. 10) be **VACATED**.

It is further **ORDERED** that Plaintiff UDP's Motion to Require Garnishee Riyad Bank to Produce Texas State Banking License Application Documents and to Stay Issue of Report and Recommendation Until their Production (Dkt. 65) be **DENIED**.

Finally, because the Court's jurisdiction terminates with the vacatur of the Rule B attachment, it is further **RECOMMENDED** that the UDP's claims be **DISMISSED** for lack of jurisdiction and that the Court enter a separate **FINAL JUDGMENT** pursuant to Fed. R. Civ. P. 58(a) indicating that UDP should take nothing on its claims.

19

The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on May 18, 2023 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge