IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Ultra Deep Picasso Pte. Ltd., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO.:  4: 21-cv-3891 |
| vs. | § | |
| | § | IN ADMIRALTY, Rule 9(h) |
| Dynamic Industries Saudi Arabia Limited, *et al.* | § | |
| | § | |
| Defendant and Garnishees. | § | |

**ULTRA DEEP PICASSO PTE. LTD.'S OBJECTION
TO MAGISTRATE'S REPORT AND RECOMMENDATION**

**Request for Oral Argument**

Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), S.D.Tex L.R. 72, and General

Order 2002-13, Plaintiff Ultra Deep Picasso Pte Ltd. ("UDP") respectfully submits the following

objections to certain findings and recommendations found in the Magistrate Judge's

Memorandum and Recommendation ("R & R" or "Report")) issued on May 18, 2023 [ECF 69].

28 U.S.C. § 636(b)(1) permits any party to serve and file objections to the findings and

recommendations of the Magistrate.  Ultra Deep thus submits these objections to preserve

matters for review by this Court, as well as for subsequent appellate review.[1]

**LEGAL STANDARD**

This Court's review is *de novo*.  See 28 U.S.C. § 636(b)(1) ("A judge of the court shall

make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which object is made.") and Fed. R. Civ. P. 72(b).

---

[1]     UDP expressly refers to and incorporates its briefing to this Court responding to and
opposing the motion to vacate the Rule B writ, including ECF 43, 44 and 60, as well as its
motion for further discovery, ECF 65, 68.

Contrary to Judge Ho's Recommendation, this Court should maintain UDP's Writ of Attachment.  Contrary to the Report, jurisdiction, properly obtained, over Riyad Bank, the Garnishee in this matter, obtained by serving Riyad Bank's Texas resident agent for service of process, is jurisdiction over the *res* and what the garnishee, Riyad Bank, controls.

There is no authority for any distinction between whether the Garnishee has a limited Texas banking license or a general Texas banking license and indeed the Report notes that "UDP provided no authority indicating that Riyad Bank must be considered as operating to the full extent of its authority, despite "uncontroverted" evidence to the contrary" ECF 69 at 16, n. 4. Indeed, the Texas banking laws are to the contrary.  There is also no authority that UDP cannot reach accounts held internationally with Riyad Bank including DISA's as the Report concludes. Once properly served, this Court holds jurisdiction over what the Garnishee controls—in this case the accounts of Dynamic Industries Saudi Arabia Ltd. ("DISA" or Defendant).

## Basic Factual Background

UDP's Verified Complaint sets out that DISA – a joint venture between Dynamic Industries ( located in New Orleans) and Saudi Aramco Oil Company, Saudi Arabia – hired UDP to conduct subsea construction operations for a construction project in Saudi Arabia.

Apparently, Saudi Aramco never paid DISA, so DISA never paid UDP.  UDP brought this action to secure arbitration – provided for by its contract with DISA – through the Federal Arbitration Act.  The Act allows for Supplemental Rule B garnishment of defendants' property – here – DISA's Riyad Bank account – to secure maritime arbitration.

After more than a year went by following UDP's Rule B writ service on Riyad Bank by Riyad Bank's resident agent in Houston ( as Texas law requires), at the direction of Magistrate Judge Ho [ECF 53, this Court adopting that Report and Recommendations denying DISA's

motion to dismiss, ECF 58], Riyad Bank and DISA, both moved to vacate the writ.  To this day, DISA has never denied that it owes UDP exactly what UDP claims in this suit, for security for arbitration.  Instead, DISA continues to fail to pay UDP what DISA unquestionably owes UDP for its work for DISA.

## OBJECTIONS

**I.**      **Ultra Deep objects to the Magistrate's finding that UDP did not meet its burden of demonstrating that DISA's property may be found within the Southern District of Texas.**

       **1.**      **UDP Properly Attached the DISA Riyad Bank Account.  As such DISA's *res* is located within the District and this Court has Jurisdiction over DISA.**

The Verified Complaint details that DISA owes UDP overdue principal, interest, and arbitrators' and attorneys' fees of at least $10,661,633.22 arising under the parties' maritime contract. As such, reasonable grounds exist for the attachment. *Naftomar Shipping & Trading Co., Ltd. v. KMA Intl's S.A.*, No. V-11-2, 2011 WL 888951 (S.D. Tex. Mar. 10, 2011)(E(4)(f) hearing purpose is "merely holding that it is likely that alleged facts are true."); *see also PDS Gaming Corp. v. M/V Ocean Jewell of St. Petersburg*, No. 07-10088, 2007 WL 2988798, at * 1 (11th Cir. Oct. 15, 2007)(E(4)(f) hearing not a mini-trial).  DISA does not dispute that DISA cannot be found within this District.

    DISA does not dispute that UDP's claim – for money owed under a maritime contract – is an admiralty claim.

       **2.**      **The Magistrate's Report, in error, fails to apply the correct standard to the E(4)(f) hearing.**

Fundamentally, the Report and Recommendations runs over the express language of Supplemental Rule B(1)(a):

    (1) When Available; Complaint, Affidavit, Judicial Authorization, and Process.  In an in

personam action:

> (a) If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—**in the hands of garnishees named in the process**.

The focus is on the "hands of the garnishees" receiving the writs.  The Rule does **not** say, "defendant's . . . property in the District."

So why then is there a focus in some caselaw on, "property in the District?"  It is because, it is a question of whether the garnishee – served with the Rule B writ – holds the property (and thus whether the property is in the District because the Garnishee holds it).

The Report and Recommendation puts much focus on *Boland Marine & Indus., LLC v. Bouchard Transportation Co*., No. 1:20-CV-66-LY-ML, 2020 WL 10051743 (W.D. Tex. Feb. 28, 2020), *report and recommendation adopted sub nom. Boland Marine & Indus. v. Bouchard Transportation Co*., No. 1:20-CV-66-LY, 2020 WL 10051738 (W.D. Tex. Mar. 26, 2020), and Magistrate Judge Lane's opinion there concluding that the Rule B writ to garnishee Wells Fargo was proper not only, because Wells Fargo was served in the District (the express requirement of Rule B) but also because Wells Fargo had branches in the District where, one could walk in and withdraw funds.[2]

But, the "need" for this analysis flowed only from defendant Bouchard's motion to vacate which in error turned on the inapposite Supplemental Rule E(3)[3]  and New York's "separate

---

[2]    Undersigned counsel J. Stephen Simms was counsel for, briefed and argued for Boland Marine in this case.

[3]    Supplemental Rule E(3) states:

(3) Process.

entity rule" for bank deposits, which is not Texas law.  Defendant Bouchard's unsuccessful

motion (which Judge Lane referred to as "terse") is *Exhibit A hereto*; this Court can view the

entire briefing at https://ecf.txwd.uscourts.gov/cgi-bin/iquery.pl?177335509551196-L_1_0-1 .

*Boland Marine* straps on a "belt and suspender" that Rule B does not require – but hung

denial of Bouchard's motion to vacate primarily on the correct one:  the garnishee's presence in

the District.  Texas law says that where the garnishee is, so is the garnished property.  With

Riyad Bank present in this District, so also is the DISA account that Riyad Bank holds.

Unquestionably, and Riyad Bank does not dispute, it is present in this District and UDP served

Riyad Bank with the Rule B writ in this District.

Thus Riyad Bank admits in its Answer [ECF 12] and UDP also emphasized to the Court

[ECF 65],  Riyad Bank's answer, December 27, 2021, makes no mention of "agency" or any sort

of limitation of the agency ( which Texas law does not recognize, anyhow) – Riyad Bank admits

that it holds (eg – "in the hands of") a DISA account:

> "Garnishee Riyad Bank ("Garnishee") answers the allegations in Plaintiff's Original
> Verified Complaint ("Complaint") . . .
>
> 7.   **Garnishee admits that DISA holds an account with Riyad Bank and that**
> **Riyad Bank has an agent in Houston in this District**. . . .
>
> [signed by] **"ATTORNEY-IN-CHARGE FOR GARNISHEE RIYAD BANK"**

(Emphasis added).

### 3.  DISA's property is here because Riyad Bank is here

The Report, in error, finds that DISA's property is not found in the Southern District of

Texas,  ECF 69 at 8, but again, under Rule B, it's the location of the garnishee which then,

---

(a) In admiralty and maritime proceedings process *in rem* or of maritime attachment and
garnishment may be served only within the district.

applies the state law to determine property location: "in the hands of garnishees named in the process." *K Inv., Inc. v. B-Gas Ltd.*, No. 3:21-CV-00016, 2021 WL 3477356, at *2 (S.D. Tex. June 4, 2021), *report and recommendation adopted*, No. 3:21-CV-00016, 2021 WL 3473502 (S.D. Tex. Aug. 6, 2021), *aff'd sub nom. K Invs., Inc. v. B-Gas Ltd.*, No. 21-40642, 2022 WL 964210, at *2 n. 1 (5th Cir. 2022) (*per curiam*).

The Report is wrong that there was "uncontroverted evidence" when the only evidence needed Riyad Bank admitted:  UDP served Riyad Bank by Riyad Bank's agent in this District and Riyad Bank has DISA's account in its hands.   It does not matter for the purposes of Supplemental Rule B that (says Riyad Bank in its interrogatory responses – much like Bouchard argued to Judge Lane) that Riyad Bank didn't have DISA's deposits in the U.S. *Id*. at 10.  Riyad Bank admitted that it has DISA accounts "in its hands" and Riyad Bank's Texas agent received the Rule B writ in this District, according to Texas law.

Riyad Bank's Foreign Bank License is not somehow "limited" under the Texas Finance Code.  *See* Texas Finance Code §204 et seq., including §204.105 which, within limited exceptions, provides "A Texas state <u>branch or agency</u> is subject to this subtitle and other laws of this state applicable to banks <u>as if the Texas state branch or agency were a Texas state bank</u>." Texas Finance Code §204.105(a) (emphasis added).   Thus, under the Texas Finance Code it is "as if the Texas state Riyad bank agency were a Texas state bank."  UDP served Riyad Bank's resident agent – in Houston – as Texas law requires.[4]  Texas law requires the filing of bank

---

[4]	Texas Civil Practice and Remedies Code § 17.028. ("Service on Financial Institutions") states in pertinent part as follows:

> (a)  In this section, "financial institution" has the meaning assigned by Section 201.101, Finance Code.

garnishments in the jurisdiction where the resident agent of the bank is located, according to the rolls of the Texas Secretary of State. *See* Tex. Fin. Code § 59.008. *Peninsula Petroleum Far E. Pte. Ltd. v. Crystal Cruises, LLC*, No. 3:22-CV-0241-L-BH, 2022 WL 17413572, at *4 (N.D. Tex. Aug. 5, 2022), *report and recommendation adopted sub nom. Peninsula Petroleum Far E. Pte Ltd v. Crystal Cruises, LLC*, No. 3:22-CV-241-L-BH, 2022 WL 17413571 (N.D. Tex. Aug. 22, 2022).

Although Riyad Bank claims that it somehow can limit its resident agency in Texas now – it had a different story for Judge Rosenthal of this Court, in *In Re: Subpoena of Riyad Bank*, 4:02-mc-00153 (S.D. Texas, filed May 2, 2002), full case docket at

https://ecf.txsd.uscourts.gov/cgi-bin/DktRpt.pl?38771 .   Riyad Bank – through its Houston resident agent – had been served with a subpoena for records in the investigation of the then-notorious BCCI international bank fraud.  Riyad Bank (its then counsel, Vinson & Elkins) responded that it could not provide the records – not because its Texas agent was merely an "agency" but instead because, Saudi law prohibited providing the records.  Riyad Bank there described itself to this Court (**Exhibit B hereto**) as follows:

> The Bank is a commercial bank chartered under the laws of the Kingdom of Saudi Arabia. The Bank is based in Riyadh, Saudi Arabia and has 193 branches in Saudi Arabia. In addition, it has a full-fledged branch in London, an Agency office in Houston, Texas and a Representative Office in Singapore.
>
> The Agency received a commission from the Texas Commissioner of Finance to operate in Houston as an agency of a foreign bank pursuant to the Texas Finance Code § 204.101.

---

(b) Except as provided by Subsection (c) [ applying to credit unions, not applicable here], citation may be served on a financial institution by:

    (1) serving **the registered agent** of the financial institution . . . .

Riyad Bank's only resident agent in Texas, is in Houston.

The Agency has 10 employees in Houston.

Similarly in *Riyad Bank v. Al Gailani*, 61 S.W.3d 353 (Tex. 2001), Riyad Bank – out of its Houston office – had attempted to collect on a promissory note – and was able to defend against suit against it in Texas because, as a foreign corporation, it has a resident agent. Riyad Bank made no attempt there to argue, that it somehow was exempt from suit because it somehow had a limited "agency."

That would be as absurd as, for example, truck manufacturer "X" claiming that, even though it had a resident agent in Texas (but no other operations in Texas), it had limited the authority of that agent to only accept service of process for suits under $100. Texas law does not permit resident agency to be limited by the principal or otherwise as Riyad Bank argues (contrary to its representations to this Court, and to the Texas Supreme Court) here.

As such, there is jurisdiction over Riyad Bank – and the deposits which it holds anywhere through its resident agent.

The Report in part gets the law right [ECF 69 at 7] citing *Sembawang Shipyard, Ltd. v. Charger, Inc*, 955 F.2d 983-87, but falls into error concluding that the account (contrary to Riyad's own answer in this case) isn't in Riyad Bank's hands. In *Sembawang*, the Fifth Circuit explained that "if the person cannot be found in the district (which DISA cannot), the plaintiff is protected by the ability to proceed against the thing (DISA's account or accounts). Such a proceeding is an action *quasi in rem*." *Id*. at 987. However, the Court's finding that there is no *res* within the District is then based on Riyad Bank's inapposite insistence that it holds no DISA accounts in the U.S. (but does hold them otherwise). ECF 69 at 11. But it does not matter that one can't, says Riyad Bank, walk into its Houston offices and make a cash withdrawal. What does matter is that as Riyad Bank admits in its answer, it holds DISA

accounts and that UDP has served it – by its resident agent in this District as Texas law requires.

In *Af-Cap. Inc. v. Republic of Congo*, 2005 U.S. Dist. LEXIS 46414 (W.D. TX.) (Austin Div.)(Sparks, J.) (emphasis added):

> Garnishees also contend the Court lacks subject matter jurisdiction because a Texas garnishment action has an "in-rem aspect" requiring [*11] that any property to be garnished must be located in Texas. **However, as even the cases cited by Garnishees make clear, the test for *in rem* jurisdiction over a garnishee's obligations is satisfied so long as the court has personal jurisdiction over the garnishee.** Missouri, Tex., and Kan. Ry. Co. v. Swartz, 53 Tex. Civ. App. 389, 115 SW 2 75, 277 (Tex. Civ. App. 1909, no writ) (relying on Harris v. Balk, 198 US 215, 223-24, 25 S Ct. 625,49 L. Ed. 1023 (1905)) (rejecting the view that a debt can only be garnished in the state of the garnishee's domicile). **Since the Court holds it maintains personal jurisdiction over Garnishees, any debts they owe the Congo are subject to the exercise of in rem jurisdiction by this Court**.

Then U.S. Magistrate Judge Johnson, her report and recommendation adopted by Judge Lake of this District, in *Solgas Energy Ltd. v. Fed. Gov't of Nigeria*, No. MC H-09-368, 2010 WL 11679364, at *6 (S.D. Tex. Feb. 9, 2010)(Johnson, U.S.M.J.), *report and recommendation adopted*, No. MC H-09-368, 2010 WL 11679366 (S.D. Tex. Apr. 2, 2010)(Lake, J.) following the Western District, therefore writes as follows:

> Plaintiff cites the court to an unpublished federal district court opinion that applies Texas law and holds that, as long as the court has personal jurisdiction over the garnishee, the court may exercise in rem jurisdiction over property, <u>regardless of its location</u>, that is to be garnished. *AfCap, Inc. v. Congo* [*12/ , Nos. A-OI-CA-I00-Ss' A-OI-CA-321-Ss' 2005 US Dist. LEXIS 46414,2005 WL 6128154 at *3 (WD. Tex. Feb. 4, 2005)(unpublished), *rev'd in part on other grounds*, 462 F.3d 417 (5th Cir. 2006)34 (citing *Mo., K. & T Rv. Co. of Tex. v. Swartz*, 115 SW 275, 277 (Tex. Civ. App. 1908, no writ), which, quoting *Harris v. Balk*, 198 US 215, 222, 25 S Ct. 625, 49 L. Ed. 1023 (1905) , states, **"Power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues.").[Fn 35]**
>
>> Fn 35  The *Harris* opinion provided more explanation: "If there be a law of the state providing for the attachment of the debt, then, if the garnishee be found in that state[ ] and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him[ ] and can garnish the debt due from him to

the debtor of the plaintiff[ ] and condemn it, provided the garnishee could himself be sued by his creditor in that state." *Harris,* 198 U.S. at 222, 25 S.Ct. 625. The Harris case continues to be cited within this circuit as a seminal case on this point. *See, e.g., Af-Cap, Inc*., 383 F.3d at 372

**<u>Here, no one disputes the court's authority to exercise personal jurisdiction over Garnishee. Thus, in the absence of any Texas law to the contrary, the court follows its sister court and finds that it also has jurisdiction over the bank funds at issue, even though they are held in an account maintained in New York</u>.**

(Emphasis added).

There is no Texas – or Federal (applying to Supplemental Rule B) - law to the contrary applying in this District and the Report cites none.  Federal law, applying Rule B, looks to Texas law, confirming the garnishment of Riyad Bank, by its agent in Houston, establishes proper service over the Riyad Bank account.  Accord, *Shinto Shipping Co. v. Fibrex & Shipping Co*., 425 F. Supp. 1088, 1091 (N.D. Cal. 1976) ("I therefore hold that the legal efficacy of serving one bank office or branch with attachment process to reach accounts carried at other branches or offices, whether the banking operation be intrastate or interstate in character, is to be determined by reference to the law of the state in which process issues."), *aff'd*, 572 F.2d 1328 (9th Cir. 1978); *Engineering Equip. Co. v. S.S. Selene*, 446 F. Supp. 706, 709 n.5 (S.D.N.Y. 1978)("Under Rule B(1), the situs of a debt is determined according to federal law.  As a matter of federal law, however, we defer to the law of the forum state on this question.").

Courts sitting in admiralty have applied a similar analysis in finding that attached properties – specifically, attached debts owed to the defendant by a third-party garnishee – are located within the district when the third-party garnishee [Riyad Bank] is located within the district. *See PSARA Energy, LTD v. SPACE Shipping, LTD*, 290 F. Supp. 3d 158, 163 (D. Conn. 2017); *see also Day v. Temple Drilling Co.*, 613 F. Supp. 194, 196 (S.D. Miss. 1985).

In *Day*, the parties disputed whether debt owed to the defendant by the garnishee was "located within the district" and, therefore, properly attached under Rule B(1). 613 F. Supp. at 196.

Phrasing the dispute as whether the court had jurisdiction over the debt itself, the court concluded, "**it appears that the Fifth Circuit would hold that in *quasi in rem* actions, if the court has jurisdiction over the garnishee-defendant, it has jurisdiction over the debt**." *Id.* at 196-97 (emphasis added). That is, **the situs of a debt follows the debtor-garnishee so that jurisdiction over the garnishee-debtor grants jurisdiction over the debt**. *Id.* (emphasis added). Finding this analysis comports with the purpose of Rule B, the court determined that because it had personal jurisdiction over the debtor garnishee, the debt was therefore properly within the district. *Id.* at 197. As such, DISA's property (accounts) at Riyad Bank (regardless of whether they are in Saudi Arabia or otherwise) are deemed to be properly within the district because this Court has personal jurisdiction over the garnishee, Riyad Bank.

Recently, *PSARA Energy* similarly analyzed whether a debt owed by a garnishee was "within [the] Court's territorial reach" for purposes of Rule B. 290 F. Supp. 3d at 163. The court noted that "[t]he *situs* of intangible property has traditionally [been] seen as 'fictional,' but 'where the debtor and creditor are within the jurisdiction of a court, that court has constitutional power to deal with the debt." *Id.* (quoting *Standard Oil Co. v. New Jersey*, 341 U.S.428, 438 (1951)). Accordingly, the court concluded that when a debtor-garnishee is subject to a court's *in personam* jurisdiction, the debts are deemed to have their situs within the court's district. *Id.* at 164.

*Day* and *PSARA Energy* are on point. Their rationale permits courts, for purposes of Rule B, to determine the situs of intangible property where it is not otherwise readily apparent.

- 11 -

Therefore, "[a] bank account is a debt that a bank owes to the depositor." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992). Thus, under *Day*'s and *PSARA Energy*'s rationale, bank accounts are within a court's district when the court has <u>personal jurisdiction over the bank-garnishee</u>, as this Court does here over Riyad Bank since Riyad was properly served through its resident agent for service of process. *Eng'g Equip. Co. v. S.S. Selene*, 446 F. Supp. 706, 708–09 (S.D.N.Y. 1978)( "Since the Holt defendants (the garnishees) are subject to our in personam *709 jurisdiction, the debts are deemed to have their situs within the district. Thus, there is no doubt that the requirements of Rule B(1) have been satisfied in this case.").As noted above, funds in bank accounts are intangible assets. Because the situs of intangible property is, in truth, a legal fiction, *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1122 (5th Cir. 1985), various courts have recognized that some intangible properties "may have more than one situs." *Acme Contracting, Ltd. v. Toltest, Inc.*, 07-10950, 2008 WL 4534175, at *6 (E.D. Mich. Oct. 3, 2008).

Texas does not adhere to the separate entity rule. Courts are split on whether bank accounts have a situs in only a single branch or in multiple branches. Unequivocally, this determination is made in deference to the laws of the forum state.[5] The Second Circuit, guided in part by New York law[6] dating back to at least 1930, follows the "separate entity rule," which

---

[5]     "Under Rule B(1), the situs of a debt is determined according to federal law. As a matter of federal law, however, we defer to the law of the forum state on this question." *Eng'g Equip. Co. v. S.S. Selene*, 446 F. Supp. 706, 709 (S.D.N.Y. 1978) (citing *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52 (2d Cir. 1965)); *see also Shinto Shipping Co. v. Fibrex & Shipping Co.*, 425 F. Supp. 1088, 1091 (N. D. Cal. 1976). A survey of caselaw reveals the majority of states do not have laws on this subject, thus requiring courts to examine comity and logic to predict what the state high court would likely decide. *See e.g.*, *Marisco, Ltd.*, 889 F. Supp. at 1250 ("Insofar as the Hawai'i Supreme Court has never addressed whether to adopt the separate entity rule, this Court's task is to predict how the supreme court would decide the issue."). Because Texas has no direct authority, the undersigned must do the same.

[6]     When there is no federal maritime law to guide a decision, courts generally look to state law to determine property rights. *Shipping Corp. of India*, 585 F.3d at 70 (citing *California ex*

dictates that "each branch of a bank [be] treated as a separate entity for attachment purposes." *Allied Mar., Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010) (quoting *Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 52 (2d Cir. 1965)). As a result, "the debt owed by a branch finds its situs within the territorial jurisdiction of [that] branch." *Id.* Accordingly, under the "separate entity rule," a bank account has only one location – the branch, or the main office, supposedly holding the funds for the account owner.

For example, in rejecting the separate entity rule, the court in *Acme Contracting, Ltd v. Tolest, Inc.* opined that "[t]he purpose behind the rather ancient rule" is outdated because today, "banks use high speed computers with central indexing capabilities to keep track of accounts which, along with other sophisticated communications equipment, enable a bank with multiple branches to easily monitor checking accounts from the main branch." No. 07-10950, 2008 WL 4534175, at *6 (E.D. Mich. Oct. 3, 2008). The court further noted that given the defendant's "right to draw on its account at any of the numerous [bank] branches," "[a]s a practical matter, the funds in [the defendant's] account are 'located' wherever they are available for withdrawal by the defendant." *Id.* at *7; *see also Regions Equip. Fin. Corp. v. Blue Tee Corp.*, 313 F.R.D. 568, 571 (E.D. Mo. 2016) (following *Acme Contracting* and finding that the funds held in the defendant's bank account were so "fungible, intangible" that the bank "was able to seamlessly freeze [the assets] . . . everywhere immediately after it was served with the writ at" a single branch location); *Marisco, Ltd. v. Am. Samoa Gov't*, 889 F. Supp. 2d 1244, 1250 (D. Haw. 2012) (predicting the Hawai'i Supreme Court would reject the separate entity rule "as being 'a somewhat dated and seldom-cited legal doctrine'") (quoting *Tribie v. United Dev. Grp. Int'l*

---

*rel. State Lands Comm'n v. United States*, 457 U.S. 273, 283 (1982) (considering state law where federal admiralty law is "thin" and "a decision ... contrary to the general rule of the state might have disruptive consequences for the state banking system")).

*LLC*, No. 07–22135–CIV, 2008 WL 5120769, at *3 (S.D. Fla. Dec. 2, 2008)).  Given Riyad

Bank's license to transact business within the State of Texas, its claims that it "cannot access

accounts" and funds "cannot be withdrawn" are simply without merit as the Texas Finance Code

§ 204(c)(1)-(11) specifically grants a <u>foreign bank agency</u> or branch to, among other powers, to:

> (8)  accept deposits to the extent permitted by Subsection (b);
> (9)  receive money for transmission and transmit the money from its authorized place of business in this state to any other place;
> (10)  act as an indenture trustee or as a registrar, paying agent, or transfer agent, on behalf of the issuer, for equity or investment securities;

Texas Finance Code, § 204(c)(8), (9), (10).

In light of the foregoing, the basis and rationale of the separate entity rule appears to be

based on a view of the banking system that predates modern computerized banking.  Indeed, the

Texas Finance Code specifically gives a licensed Foreign Bank the ability to "receive money for

transmission and transmit the money from its authorized place of business in this state to any

other place…"  This is wholly inconsistent with any alleged logic behind the separate entity rule.

Riyad Bank, properly served with the Rule B garnishment writ in this District, has held

the bank account which, under Texas law, is in this District because Riyad Bank is generally, and

specifically in this District, and thus there is property within the District sufficient to satisfy Rule

B.

Numerous cases, in the Southern, Northern, and Western districts of Texas make clear

that if there is jurisdiction over the garnishee, then there is property that is present in the District.

To the extent that DISA suggests otherwise, based on the claimed distinction that Riyad Bank's

presence in Texas is not a deposit with ATMs and cash, the fact that there is unquestionably an

agent in the Southern District that UDP properly served, who is a direct agent of Riyad Bank,

means that there is property within the District.  The property, according to Texas law, makes

that entirely and completely clear.   As the Northern District of Texas stated ( before strapping on

the unnecessary "you can walk in and withdraw money too" belt and suspender):

> Here, Plaintiff has filed a required affidavit and verified complaint to attach
> Defendant's BOA Account, and it has provided notice to, and service on,
> Defendants. (docs. 2, 9, 20-21.) It has also shown that its bunker supply contract
> with Defendant is a *prima facie* admiralty claim, *see Heidmar Trading LLC v.
> Emirates Trading Agency, LLC*, No. CIV.A. H-11-3847, 2011 WL 5827300, at \*4
> (S.D. Tex. Nov. 18, 2011) (citing *Exxon Corp. v. Cent. Gulf Lines, Inc.*, 500 U.S.
> 603, 612 (1991)), that **Defendant is a California LLC with its principal place of
> business in Florida, and that Defendant's only connection with this district is
> BOA's service agent**, *see MARMAC, LLC v. InterMoor, Inc.*, 566 F. Supp. 3d 559,
> 580 (E.D. La. Oct. 14, 2021), *appeal dismissed sub nom. Marmac, L.L.C. v. US
> Wind, Inc.*, No. 21-30662, 2021 WL 8201393 (5th Cir. 2021). **Defendant does not
> contest that the BOA Account may be found within this district, and it points
> to no statutory or maritime law bar to this attachment. None is apparent.
> Because Plaintiff has met the Rule B requirements, and Defendant does not
> show otherwise,[18] Defendant's BOA Account was properly attached**.

*Boland Marine & Indus., LLC*, 2020 WL 10051743, at \*8-9 (emphasis added); *See*

*generally Peninsula Petrol. Far E. Pte. Ltd.*, 2022 WL 2239847, at \*2-4; *Peninsula*

*Petroleum Far E. Pte. Ltd. v. Crystal Cruises, LLC*, No. 3:22-CV-0241-L-BH, 2022 WL

17413572, at \*5 (N.D. Tex. Aug. 5, 2022*), report and recommendation adopted sub*

*nom. Peninsula Petroleum Far E. Pte Ltd v. Crystal Cruises, LLC*, No. 3:22-CV-241-L-

BH, 2022 WL 17413571 (N.D. Tex. Aug. 22, 2022); *Stifel Fin. Corp. v. Iannarino*, No.

2:18-CV-1223, 2023 WL 343957, at \*6 (S.D. Ohio Jan. 20, 2023) (an account is located

wherever the financial institution maintains a branch) (emphasis added); *see*

*also* Brennan, *All Things Visible and Invisible*, 35 Miss. C. L. Rev. at 257 ("If the

jurisdiction does not follow the Separate Entity Rule, attachment can be had in any

district in which the bank that maintains the defendant's account maintains a branch

office.").

> To conclude that Riyad Bank can only be sued on certain types of claims, because

it claims that funds cannot be withdrawn within Texas, which is what the Report

fundamentally concludes, is mistaken and inconsistent with Rule B and purposes behind

it.  It is also inconsistent with Texas law in that Texas does not follow the separate entity

rule.  Accordingly, attachment can be in any district in which Riyad Bank maintains an

office.  Riyad bank maintains an office, along with an agent for service of process, in

Houston, Texas.

The Report's "no property in the District" position rises and falls on the notion that

personal jurisdiction doesn't equal property in the District: e.g. – the actual property has to be in

the District, not just the garnishee who controls it.  That, however, is not the law, at least in

Texas.  "[T]he court is persuaded that the Texas Supreme Court would reject the separate entity

rule and find that bank accounts are located wherever funds are available to the account holder.

*Id*. at, *6.

Here, it is undisputed that Riyad Bank has an office in Houston and, accordingly, an

agent in the State of Texas that was properly served.  Accordingly, <u>DISA's intangible property –

the account – is found within the Southern District of Texas.</u>  *Id*. at, *7.  As such, DISA has

intangible property—the account itself—within the District sufficient to satisfy the requirements

of Rule B and, DISA's motion to vacate the writ on the allegation that the writ did not catch any

property within the District should be denied.

As the Western District Court in *Boland v. Bouchard* made clear, this is also consistent

with the purpose of Rule B:

> The purpose and expansion of admiralty attachment indicates a broad intent to
> allow plaintiffs proceeding in admiralty to secure satisfaction of their case. *See*
> 7A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 90 (3d
> ed. 1997).[9] Without questioning the justification for extending Rule B attachment
> from vessels to intangible bank accounts,[10] providing litigants with a means of
> ensuring satisfaction in their admiralty suit by attaching bank accounts –

intangible property that can be secured without "requir[ing] the plaintiff to scour the globe" – appears to be in accordance with the purpose of Rule B.

*Id.,* at *7.

## II.    **The Report in Error Denies Further Discovery**

The only reason that UDP moved for further discovery was – as UDP detailed in its motion – Riyad Bank at the last minute – and after discovery was over – sprang the surprise that it had instead made a limited filing with the Texas Department of Banking so, that made a different in its status as garnishee.

UDP therefore fairly asked that the Court require Riyad Bank to produce, what it actually had filed with the Texas Department of Banking – because – before its claim there was a "mistake" Riyad Bank never claimed that its "agency" was limited.

What happened was remarkable.  DISA's motion to vacate supplied an affidavit from Riyad Bank's Houston manager [ECF 56-3] contending (for the first time in now over one year history of the case) that Riyad Bank somehow had a limited agency license with the Texas Department of Banking – DISA then arguing, based on the affidavit, that Riyad Bank wasn't a valid garnishee.

In the 21 day response time UDP was able to obtain from the Texas Department of Banking Riyad's operating certificate – ECF 60-2, which along with the other documents Riyad Bank had filed with the State of Texas – ECF 60-1 – confirmed that there was no such limitation (Riyad Bank counsel had, after UDP counsel requested these documents, refused to provide them claiming, that discovery was over).

But Riyad Bank – ECF 63 – **after argument on the motion to vacate**  - then filed a "supplement" with a "corrected" certificate – stating that the certificate UDP had obtained was in error.

As set out above, whatever Riyad Bank claimed doesn't matter – it admitted that it holds DISA accounts and that UDP served it with the writ.  But, given that Riyad Bank at the last minute (and after argument on the motion to vacate) insisted that its "mistake" makes some sort of a difference – that – its resident agent filing with the Texas Secretary of State was really no such filing at all ( a mistake) – the Magistrate Judge should have required Riyad Bank to produce its filings.

Tellingly, instead of simply producing the filings – which supposedly would have supported its positon - Riyad Bank urged the Magistrate to validate its unfair "gotcha" on UDP – and the Report in error allowed that.

The Court also should overrule the Report on these grounds, which UDP details and incorporates here, its filings at ECF 65, 68.

## **CONCLUSION**

UDP respectfully objects to Magistrate Ho's Memorandum and Recommendation on the grounds set forth above.  This Court should instead deny the motion to vacate the writ, on the sound and supported grounds, found consistently by the Fifth Circuit and U.S. District Courts throughout Texas, including this District.

## **Request for Hearing**

UDP respectfully requests that this Court hear its objections and support for this Court to deny the motion to vacate and maintain the Rule B writ which this Court has ordered.

Dated:  June 1, 2023.

Respectfully Submitted,

/s/ J. Stephen Simms
J. Stephen Simms
Simms Showers LLP
201 International Circle, Ste. 230
Baltimore, Maryland 21030

Telephone: (410) 783-5795
Facsimile: (410) 510-1789
jssimms@simmsshowers.com

Ultra Deep Picasso Pte. Ltd. Counsel

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2023 I caused the foregoing Response to be filed on this

Court's CM/ECF system for service on all record counsel.


/s/ J. Stephen Simms