IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| Boland Marine & Industrial, LLC, | § § | |
| Plaintiff, | § § § | |
| vs. | § § | Civil Action No.: 1:20-cv-00066-LY |
| Bouchard Transportation Co., Inc., | § § | IN ADMIRALTY |
| Defendant, | § § § | |
| and | § § | |
| Wells Fargo Bank, N.A., | § § | |
| Garnishee. | § | |

**OPPOSED EMERGENCY MOTION TO VACATE JANUARY 23, 2020, ORDER OF ATTACHMENT AND BRIEF IN SUPPORT**

Defendant Bouchard Transportation Co., Inc. ("Bouchard") moves this Court to vacate its January 23, 2020, Order, attaching its bank account in New York on the following grounds as more fully set forth below and the accompanying Declaration.

1. The attachment obtained by Boland Marine & Industrial LLC did not attach any property within the district.

2. This court does not have personal jurisdiction over the garnishee Wells Fargo which invalidates the attachment.

3. Boland has no claim against Bouchard upon which relief can be granted, as Bouchard was acting as an agent for disclosed principals and having no claim against Bouchard, Boland cannot obtain attachment against Bouchard's bank accounts.

519743.1



4.  Bouchard and Boland orally settled the case which should be dismissed and the attachment vacated.

5.  If the Order of attachment is not vacated, Defendant will be forced out of business altogether due to financial inability to pay its employees or otherwise operate its business. Further, the status quo now poses a health and safety threat to the people of New York (*see*, attached January 29, 2020, Notices from the U.S. Department of Homeland Security, and United States Coast Guard. *See*, Exhibit "B."

## BRIEF IN SUPPORT

### I. THE BOLAND ATTACHMENT OF BOUCHARD'S BANK ACCOUNT IN NEW YORK PURSUANT TO SUPPLEMENTAL RULE B WAS ILLEGAL AND THEREFORE VOID AND THE ATTACHMENT SHOULD BE VACATED

**A. Facts**

Bouchard Transportation operates tugs and barges on behalf of the corporate owners of those tugs and barges. These tugs and barges are articulated ("ATB's") and each tug and barge operate as a unit. Bouchard operates approximately 25 ATB's in the Gulf of Mexico and the East Coast.

Each tug and each barge are owned by a separate corporation and Bouchard acts as their agent. For example, the Tug Ralph E. Bouchard is owned by the Tug Ralph E. Bouchard Corp. On various dates, plaintiff, Boland Marine, a Louisiana corporation with its principal place of business in New Orleans, provided shipyard services in New Orleans to the following tugs, the Linda Lee, the Ralph E. Bouchard, the Danielle C. Bouchard, the Kim Bouchard, the Bouchard Girls and the J. George Betz. These companies pay Bouchard to operate the vessels. As agent for these disclosed principals, Bouchard contracted with Boland Marine to provide shipyard services and after

2

performing these services, Boland Marine issued invoices only to the owners of each of the tugs and not to Bouchard Transportation. The invoices are attached as Exhibit "A".

Bouchard maintains several bank accounts with Wells Fargo in New York City for the operation of its business. Bouchard has no bank accounts in Texas or within the confines of the geographical coverage of the United States Court for the Western District of Texas.

On January 21, 2020, Boland Marine & Industrial, LLC ("Boland") commenced this action against Bouchard (and not against the owners of the vessels), by filing a Verified Complaint demanding $1,731,799.92 in damages and obtained an Order of Attachment pursuant to Rule B of the Supplemental Admiralty Rules, which permits attachments of property within the District. Supp. Adm R. E (3) (a). The attachment was served on a registered agent of Wells Fargo in Austin, TX. Wells Fargo promptly seized the money in the Bouchard account in New York and continues to seize funds as they are coming into the account.

The attachment has had a devastating effect on Bouchard, which has not been able to make payroll and who has had employees resigning their positions for lack of wage payment. In addition, crewmembers on various tugs and barges have not been paid their wages and the Coast Guard has cited Bouchard for lack of payment, and has found Bouchard not to be in conformance with its Safety Management System. Vendors will not provide fuel or lube oil or maintenance and repairs to the tugs and barges without advance payment which Bouchard cannot make with its accounts attached. This may force Bouchard out of business.

On January 28, 2020, Morton Bouchard, the CEO of Bouchard, had a conversation with Walter Haley, an officer of Boland, in an attempt to settle the case and the parties agreed that the case would be settled with a payment of $200,000 by Bouchard immediately and further payments of $100,000 per month until the debt was paid. In addition, Bouchard promised to provide Boland

3

with a right of 1st refusal for future topside Bouchard vessel maintenance and repair in the Mississippi River for 2 years, so long as Boland provided competitive rates. Boland, through its Baltimore counsel, now attempts to disavow the settlement.

## II. THE PROPERTY IS NOT WITHIN THE DISTRICT

Rule B provides for the attachment of the effects of any defendant in a maritime action. The provision of shipyard services for maintenance and repair is a maritime action. However, Rule E (3) (a) restricts the attachment only to property within the District. In this case, within the District means property within the Western District of Texas. See 29 *Moore's Federal Practice* § 705.4 [1] at 705-53 ( 3d ed. 2019).

Federal law is different from state law in that Texas law permits the attachment of any debt owed by a debtor over whom the state has personal jurisdiction. See *AfCap, Inc. v. Congo* 2005 *US Dist. LEXIS 46414,2005 WL* 6128154 *at* *3 *(WD. Tex. Feb. 4, 2005)(unpublished)*, rev'd in part on other grounds, 462 *F.3d* 417 *(5th Cir. 2006)*. However, this Court's "jurisdiction in this admiralty case does not depend upon the application of any state law." *Eng'g Equip. Co. v. S.S. Selene*, 446 F. Supp. 706, 709 (S.D.N.Y. 1978). Property in this District is not equivalent to personal jurisdiction over the garnishee.

## III. THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THE GARNISHEE.

It is undisputed that Wells Fargo is not incorporated in Texas, nor does it have its principal place of business in Texas. This matter arises out of services performed in Louisiana by a Louisiana company for New York corporations. Texas has no connection to this case, such that Texas courts cannot assert specific personal jurisdiction over Wells Fargo. See *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549 (2017). Texas has no general personal jurisdiction over Wells Fargo, unless Wells Fargo has consented to personal jurisdiction in Texas. See *Daimler AG v. Bauman*,

4

519743.1

571 U.S. 117, 134 S. Ct. 746 (2014). Wells Fargo does have a registered agent in Texas, but that does not operate as consent to general personal jurisdiction. *Conner v. Conticarriers & Terminals*, 944 S.W.2d 405 (Tex. App. 1997) . Even if state law applied, this Court does not have general personal jurisdiction over Wells Fargo and therefore no jurisdiction over the debt.

### IV. BOUCHARD DOES NOT OWE A DEBT TO BOLAND

In contracting with Boland, Bouchard was acting as an agent for disclosed principals. Accordingly, Bouchard owed no debt to Boland Marine, who contracted with the owning companies, in order to provide Boland with liens on the various vessels. Consequently, Boland has no claim against Bouchard and cannot attach its Bank Account. See *Veazie v. Beach Plumbing & Heating Co.*, 235 S.W. 695 (Tex. Civ. App. 1921).

### V. BOUCHARD AND BOLAND SETTLED THE CASE WHICH SHOULD BE DISMISSED AND THE ATTACHMENT VACATED.

As evidenced by the Morton S. Bouchard III Declaration, authorized officials of both companies settled the case. Under admiralty law, settlement contracts do not need to be in writing. See *Mobley v. Montco, Inc.*, No. 03-1130, 2004 U.S. Dist. LEXIS 2410 (E.D. La. Feb. 17, 2004). Hence, the Court should enforce the settlement agreement, dismiss the case and vacate the attachment.

### VI. A TRUE EMERGENCY IS PRESENT

If the January 23, 2020, Order is not vacated, Defendant will on information and belief be forced to cease all business at 12:00 noon tomorrow, January 31, 2020, due to inability to pay its employees, who have threatened to quit en masse at that time, Vessel employees have already began to abandon their vessels, or otherwise operate its business. Further, the current circumstances pose a health and safety threat to the people of New York. See, attached notices

from the U.S. Department of Homeland Security and the United States Coast Guard. (Exhibit "B").

Respectfully submitted,

GRAY & BECKER, P.C.
900 West Avenue
Austin, Texas 78701
Tel: (512) 482-0061
Fax: (512) 482-0924

By: _____
Douglas M. Becker
State Bar No. 02012900
Doug.Becker@graybecker.com


John J. Walsh
New York Bar No. 1316165
walsh@freehill.com
Freehill Hogan & Mahar LLP
80 Pine Street
New York, New York 10005-1759
*Pro Hac Vice*

*Attorneys for Bouchard Transportation Co., Inc.*

## REQUEST FOR ORAL HEARING

Defendant requests an oral hearing upon this Emergency Motion.

_____
Douglas M. Becker

6

519743.1



**Boland Marine** ORIGINAL
**-& Industrial, L.L.C.**

ESTABLISHED 1866

1000 Tchoupitoulas Street, Post Office Box 53287, New Orleans, Louisiana 70153
Telephone: (504) 581-5800, Fax: (504) 581-5814, Cable: BOLAND

DUE UPON RECEIPT

DATE 5/11/2019
INVOICE # 0519-024

CUSTOMER ORDER # 9057059

): BOUCHARD BARGE 230  BOUCHARD B NO. 230 CORP. LLC
58 SOUTH SERVICE RD, STE. 150  Office: 631-390-4900
MELVILLE  N.Y.  11747

TERMS: DUE UPON RECEIPT

| VESSEL | LOCATION | JOB# | OPEN DATE | COMPLETE DATE |
|---|---|---|---|---|
| BOUCHARD BARGE 230 | POLAND AVENUE | 23671 | | |

We expressly condition our contract for vessel repair and other services upon the basis of insured liabilities and terms as set forth below. All terms stated in this offer are final and deemed material to the formation of a contract. They cannot be varied, altered, or changed by implication or by any means other than an express, written agreement to different terms signed by us. Written acceptance containing terms not consistent with any of the terms herein stated or which shall be deemed to alter materially the above terms is ineffective as an acceptance but may at our sole option be deemed a counter-offer and as such accepted for the purpose of forming a contract but only by our management, written acceptance of such inconsistent terms. In no event shall our liability for any claim arising out of or relating to this contract and/or the subject thereof exceed in the aggregate the sum of $300,000.00.

We are not liable for any loss, damage or delay resulting from strikes or labor difficulties, whatsoever and wheresoever occurring, or for stoppage of work due to causes beyond our control.

We are not liable for defective workmanship or material, whether latent or otherwise, or for damage to any vessel or for any loss sustained by its owners, charterers or underwriters, or parties in interest, directly or indirectly in contract, tort or otherwise, unless the same is caused *solely by the negligence of our own plant employees,* which negligence shall not be presumed but must be affirmatively established. Our liability, if any, is strictly limited to the cost of repair, correction or replacement thereof AND IN NO EVENT SHALL WE BE LIABLE FOR ANY CONSEQUENTIAL DAMAGE WHATSOEVER INCLUDING BUT WITHOUT LIMITATION, FOR FAULTY OR NEGLIGENT DESIGN OR MANUFACTURE, DELAY, DETENTION, DEMURRAGE, TOWAGE, AND PILOTAGE.

We shall be discharged from all liability for defective workmanship or material or for loss or damage, unless the same is discovered prior to any claim in writing made to us within sixty days and litigation is commenced within one year after our work has ceased for whatever reason or has been completed, or the vessel has been redelivered, whichever first occurs.

We shall not be liable for any personal injury, including death, or for damage to property of third parties, unless the same is the result of the *sole negligence* of our own plant employees. The vessel, its owners, and all parties in interest, shall indemnify and hold us harmless from all liability arising under any air or water quality statute or regulation unless the same shall be caused by the *sole* negligence of our own plant employees.

In no event shall we be liable for the cost of defense, including attorney's fees, of any action whether commenced by our plant employees, subcontractors' employees, or others against the vessel, its owners, agents, charterers or underwriters.

THE FOREGOING IS IN LIEU OF ALL WARRANTIES AND LIABILITIES EXPRESSED OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS, and any document which unilaterally purports to alter or increase our liability beyond that stated herein is expressly rejected by us and does not form a part of this contract.

Nothing herein shall be deemed to constitute a waiver of our maritime lien. Invalidity of any one or more provisions of this contract shall not affect or impair the remaining provisions. This contract may not be changed orally.

A maritime lien is reserved on any vessel for all charges which may accrue hereunder whether or not such charges may be billed to charterer, operator or agent. In the event the charges hereunder shall not be paid on presentation of invoices thereof, BOLAND MARINE & INDUSTRIAL, L.L.C. shall place its claim therefor in the hands of an attorney for collection, the owner and/or operator of the vessel to which the services have been rendered shall pay all expenses of collection, including reasonable attorney's fees and interest.

Different or more extensive liabilities will be accepted if an agreement in writing stating the nature and extent thereof is entered into before the vessel enters our yard or work is commenced, whichever first occurs, and an adjustment is made in the price which shall include the cost of appropriate additional insurance.

**PAYMENT TERMS TO BE AGREED UPON BEFORE COMMENCEMENT OF WORK.**

### Vapor Pipe Repairs
Furnished berthing at Poland Avenue Wharf, Barge 230 was inerted on arrival and at all time during repairs. Furnished Marine Chemist, replaced vapor valves and test as specified.

**Total = $20,000.00**

Full capinatic

RECEIVED
MAY 2 8 2019
By_____

tch# N55
ndor# 2157
ACCT/DEPT

