UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE SUBPOENA OF RIYAD BANK | § | |
| | § | MISC. ACTION NO. 02-153 |
| 700 Louisiana St. Suite 4770 | § | |
| Houston, Texas 77002 | § | Hon. Lee H. Rosenthal, Judge |
| | | *Filed Electronically* |

### RESPONSE TO BCCI'S NOTICE OF SUPPLEMENTAL AUTHORITY

TO THE HONORABLE JUDGE OF SAID COURT:

Riyad Bank (the "Bank") and Riyad Bank, Houston Agency (the "Agency") file this Response to the Notice of Supplemental Authority filed by BCCI Holdings (Luxembourg) Societe Anonyme ("BCCI"). As set out more fully in this Response, BCCI's Notice of Supplemental Authority does not add any new relevant legal authority in support of its request for a Motion to Compel, and as such, this Court should deny BCCI's Motion to Compel.

### I. STATEMENT

#### A. Procedural Background

This is a miscellaneous action filed to compel compliance with a subpoena. The underlying proceeding was filed in the United States District Court, District of Columbia between two aliens, BCCI and Abdul Raouf Hasan Khalil ("Khalil"). The subpoena was directed to the Bank but was served on the Agency at its address in Houston, Texas in an attempt to obtain Khalil's banking records to aid BCCI in enforcing its judgment against Khalil in the D.C. matter.

The Bank and the Agency served their objections to the subpoena, and on May 2, 2002, BCCI filed a Motion to Compel in this Court. In its response to the Motion to Compel, the Bank and the Agency explained that under Saudi Arabian law, banking records located in Saudi Arabia cannot be released without the approval of the Minister of Finance and National Economy or the



Governor of the Saudi Arabian Monetary Authority ("SAMA"). The Bank and Agency suggested that instead of compelling the Agency to produce Khalil's banking records and violate Saudi Arabian law, BCCI should obtain Khalil's bank account information by sending Letters Rogatory to a court in Saudi Arabia, which court will enlist the assistance of the Governor of the Province in forwarding the request to the Minister of Finance and National Economy or the Governor of SAMA.

BCCI has had several years to at least try to comply with Saudi Arabian law, but BCCI has not approached the matter appropriately. There is no doubt that BCCI is familiar with the procedure because on June 15, 2004, BCCI requested that the U.S. District Court for the District of Columbia issue Letters Rogatory to the Board of Grievances in Saudi Arabia. The Letters Rogatory did not seek documents; instead, the Letters Rogatory requested that the Board recognize and enforce the judgment entered by the District Court for the District of Columbia.

Instead of continuing to pursue the Agency and forcing both the Bank and Agency to violate Saudi Arabian law, BCCI should send Letters Rogatory to a Saudi Arabian court in order to begin the process of obtaining approval to release Khalil's banking records as suggested previously by the Bank and Agency. BCCI has chosen thus far to ignore this procedure. On October 28, 2005, BCCI filed a Notice of Supplemental Authority urging this Court to grant its previously filed Motion to Compel based on a May 20, 2004 opinion issued by the United States District Court for the Southern District of New York in *Ssangyong v. Vida Shoes International, Inc.*, No. 03 Civ. 5014 KMW DFE, 2004 WL 1125659 (S.D. N.Y. May 20, 2004). *Ssangyong* is an unpublished decision that has not been followed by any court and is not binding authority anywhere in the United States. Furthermore, the *Ssangyong* decision was issued by a New York court, and this Court is only required to follow the decisions issued by the Fifth Circuit. Even if *Ssangyong* were

binding authority on this Court, the facts and law in this case are distinguishable from the facts and law in *Ssangyong* and warrant a denial of BCCI's motion to compel.

As a practical matter, this Response only addresses the issues presented by BCCI in its Notice of Supplemental Authority. In its Response to Motion to Compel, the Bank and Agency set out additional arguments, including the fact that (1) this Court cannot compel the Bank to produce Khalil's banking records because this Court does not have personal jurisdiction over the Bank, especially since the Bank and Agency are two separate entities, (2) this Court cannot compel the Agency to produce Khalil's banking records because the Agency does not have possession, custody or control of the records, (3) this Court cannot compel the Agency to produce Khalil's banking records because under Rule 45 a court cannot compel the production of documents located outside the judicial district, and (4) this Court should not compel the Bank or Agency to produce Khalil's banking records because issues of international comity are at stake. Producing the records requested by BCCI would violate the laws of Saudi Arabia and subject the Bank to penalties as well as a potential claim for damages by Khalil. For the reasons set out more fully in the Bank and Agency's Response to Motion to Compel and the reasons set out in this Response, the Bank and Agency respectfully request that this Court deny BCCI's Motion to Compel.

**B.  Factual Background**

The Bank is a commercial bank chartered under the laws of the Kingdom of Saudi Arabia. The Bank is based in Riyadh, Saudi Arabia and has 193 branches in Saudi Arabia. In addition, it has a full-fledged branch in London, an Agency office in Houston, Texas and a Representative Office in Singapore.

The Agency received a commission from the Texas Commissioner of Finance to operate in Houston as an agency of a foreign bank pursuant to the Texas Finance Code § 204.101. The Agency has 10 employees in Houston.

## II. ARGUMENT

### A. *Ssangyong* Is Factually Distinguishable From This Case

In *Ssangyong,* the Hong Kong Bank and the New York branch were not separately incorporated. *See id.* at *2. Instead, the Hong Kong Bank was organized under the laws of the Hong Kong Special Administrative Region of the Peoples Republic of China and was licensed by the Comptroller of the Currency of the United States to conduct commercial and international bank business from a New York branch office. *Id.* at *2. Unlike in this case, the Hong Kong Bank conceded that it and the New York branch were not separately incorporated. *See id.* By contrast, in this case, the Agency received a commission from the Texas Commissioner of Finance to operate in Houston as an agency of a foreign bank pursuant to the Texas Finance Code § 204.101. The Bank has not applied for and does not have a license to operate in Houston. More importantly, and in stark contrast to *Ssangyong*, the Bank and Agency have maintained throughout the dispute with BCCI that the Bank and Agency are two separate entities.

Additionally, this case is distinguishable from *Ssangyong* because in *Ssangyong*, the Plaintiff was trying to obtain banking records of the defendants and three banks closely related to the defendants in order to establish the defendants' liability in the case. By contrast, BCCI wants this court to order banking records of Khalil, a defendant in a case pending in a court in the District of Columbia, who is not a party to any action pending in this court and who has not otherwise appeared in this court. BCCI is not seeking the banking records in order to establish liability against any party and only wants the records to help it enforce a judgment. Hence, in *Ssangyong*, the Plaintiff's need for the documents and the relevance of the documents to the case before the court was much greater than the need for the documents and the relevance of the documents in the case pending before this Court.

2549962_1.DOC

4

B.  *Ssangyong* **Is Legally Distinguishable From This Case**

According to the court in *Ssangyong,* any party that has control over the documents identified in a subpoena has to comply with the subpoena. *Id.* at *3. A party has control over documents when "that party has the right, authority, or practical ability to obtain the documents from a non-party to the action." *Id.* In *Ssangyong*, the court concluded that the Hong Kong Bank and the New York branch were the same entities because (1) the facts warranted such a conclusion and (2) the Hong Kong Bank and the New York branch failed to cite any legal authority contradicting that conclusion. Therefore, the court found that the New York branch had control over the documents located in Hong Kong and had to produce the documents to the Plaintiff.

Unlike the defendants in *Ssangyong*, the Bank and Agency have cited to Texas legal authority in support of their positions that the Bank and Agency are two different entities. For example, "For the purpose of jurisdiction, choice of law, and recognition of interbranch letters of credit … all branches of a bank are considered separate juridical entities …." *See* Tex. Bus. & Com. Code Ann. § 5.116 (Vernon Supp. 2001). This theme of separateness runs throughout the laws of Texas dealing with the regulation and administration of the banking industry. For instance a "Bank" is defined to include the idea that "A branch or separate office of a bank is a separate bank …" Tex. Bus. & Com. Code Ann. § 4A.105(2) (Vernon Supp. 2002). Additionally, the Agency received a commission from the Texas Commissioner of Finance to operate in Houston as an agency of a foreign bank pursuant to the Texas Finance Code § 204.101.

### III.  CONCLUSION

Based on the facts of this case, Tex. Bus. & Com. Code Ann. § 5.116, Tex. Bus. & Com. Code Ann. § 4A.105, Tex. Fin. Code § 204.101, Tex. Fin. Code § 204.110, and the cases discussed in the Bank and the Agency's Response to Motion to Compel, this Court should (1) treat the

Agency as an entity independent from the Bank and as such find that (2) this Court does not have personal jurisdiction over the Bank (3) the Agency does not have control over the Bank's records, and therefore (4) this Court cannot compel the Agency to produce records located in Saudi Arabia. The fact that the Bank and the Agency are separate entities distinguishes this case from *Ssangyong*, and as such, this Court should not compel the Agency to produce records in the custody, control, and possession of the Bank located in Saudi Arabia.

## IV. PRAYER

WHEREFORE, PREMISES CONSIDERED, the Bank and Agency pray that BCCI's Motion to Compel be denied, and for such other relief, both legal and equitable, to which the Bank and Agency may be justly entitled.

Dated this 1st day of December, 2005.

Respectfully submitted,

**VINSON & ELKINS L.L.P.**

/s/ Phillip B. Dye, Jr.
By:_____
Phillip B. Dye, Jr.
Federal ID No: 7216
Texas State Bar No. 06311500
pdye@velaw.com
Samina Quddos
Texas State Bar No. 24032975
1001 Fannin St., Suite 2300
Houston, Texas 77002-6760
Telephone: (713) 758-2048
Facsimile: (713) 615-5766

**ATTORNEYS FOR
RIYAD BANK AND RIYAD BANK,
HOUSTON AGENCY**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 1st day of December, 2005, a copy of the foregoing document, has been served on all counsel of record via electronic filing and or placing a copy of same in the United States mail, certified mail, return receipt requested and postage properly affixed.

      William E. Junnell, Jr.
      Schwartz, Junnell, Campbell & Oathout, LLP
      Two Houston Center
      909 Fannin Street, Suite 2000
      Houston, Texas  77010
      Telephone:  713.752.0017
      Facsimile:  713.752.0327

      Eric A. Lewis
      A. Katherine Toomey
      Baach, Robinson & Lewis PLLC
      Suite 500
      1201 F. Street NW
      Washington, DC  20004
      Telephone:  202.833.8900
      Facsimile:  202.466.5738

      *Attorneys for Plaintiffs*

      /s/ Phillip B. Dye, Jr.
      _____
      Phillip B. Dye, Jr.